

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8371 | **DATE** | 3/30/2004 |
| **CASE TITLE** | Cedric M. Nelson vs. Detective D. Stover, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. John Doe Staff and Jane Doe Staff are dismissed from this case. Defendants' motion for summary judgment [55-1] is granted. This case is dismissed with prejudice in its entirety. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 3 1 2004 date docketed | |
| | Docketing to mail notices. | | | 68 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/30/2004 | |
| DK | courtroom deputy's initials | 2004 MAR 30 PM 5:12 | date mailed notice DK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CEDRIC M. NELSON, #2001-0015469, | ) **DOCKETED** |
| | ) MAR 3 1 2004 |
| Plaintiff, | ) |
| | ) Case No. 01 C 8371 |
| v. | ) |
| | ) Magistrate Judge Morton Denlow |
| DETECTIVE D. STOVER, Detective #21337, DETECTIVE J. DOUGHERTY, Detective #20432, JEAN KIRIAZES, JOHN DOE STAFF, and JANE DOE STAFF, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cedric Nelson ("Plaintiff"), currently a pretrial detainee at the Cook County Jail ("the jail"), brings this *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, against Chicago Police Detectives Danny Stover and John Dougherty, as well as Jean Kiriazes and unknown individuals identified as John Doe Staff and Jane Doe Staff. On June 6, 2002, Defendant Jean Kiriazes was dismissed from the case. The unnamed John and Jane Does are also dismissed from the case because they were never named or served. Defendants Stover and Dougherty (collectively "Defendants") are the only remaining defendants. They are charged with violating Plaintiff's constitutional rights by failing to provide him with medical



care at the time of his arrest and consequently causing him substantial harm. Plaintiff now proceeds *pro se* because his appointed counsel was given leave to withdraw from the case on January 14, 2003.[1]

This case is now before the Court on Defendants' motion for summary judgment. For the following reasons, Defendants' motion for summary judgment is granted, and the complaint is dismissed with prejudice.

## I. BACKGROUND

When considering a motion for summary judgment, the brief and complaints of a *pro se* prisoner who is not skilled in legal analysis must be liberally construed. *Whittford v. Boglino*, 63 F.3d 527, 535 n.10 (7th Cir. 1995) (liberally construing the brief of a *pro se* prisoner to find that the prisoner had not waived an issue within the summary judgment context); *Woods v. Thieret*, 903 F.2d 1080, 1082 (7th Cir. 1990) (liberally construing the complaints of a *pro se* litigant in a civil rights case and finding a genuine issue of material

---

[1] Plaintiff's former appointed counsel submitted a statement in support of his motion to withdraw as appointed counsel on January 9, 2002. He stated that Plaintiff never had a needle in his groin area, jail medical staff provided Plaintiff with much medical attention, but that Plaintiff complained about a needle in his groin area, and medical records showed there was nothing there. Later, the medical staff at the jail discovered that Plaintiff had a needle embedded in his right hip area, and after the Court heard this information from Plaintiff's counsel in open court and ordered it attended to, the needle was surgically removed from Plaintiff's right hip. The attorney further stated that because Plaintiff never complained about his right hip to Defendants, they were as a matter of law not deliberately indifferent to his medical needs at the time that Plaintiff was in their custody. Although this pleading from Plaintiff's counsel is not a part of the motion for summary judgment, it is part of the record in this case as it was presented to the Court, which advised Defendants to review Plaintiff's medical care. However, this part of the record is mentioned only to summarize what Plaintiff appears to have admitted in his affidavits: a) that the needle was in his right hip, not in his groin or testicles, as he claimed in his complaint; and b) that he never told Defendants anything about his medical issue. Additionally, the objective medical evidence attached to the counsel's motion, much of which also was submitted by Defendants, contradicts Plaintiff's assertions.

<mark>2</mark>

fact on cross-motions for summary judgment). Therefore, the Court has construed the facts put forth by Plaintiff in such a way as to construct the most logical sequence of events and arguments possible.[2] This liberal construction, however, does not obviate the need for Plaintiff to comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1 because experience has shown that the best guarantee of evenhanded administration of the law is strict adherence to procedural requirements. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Therefore, the Court considers only those statements and allegations that Plaintiff supports with a sworn affidavit.

On February 21, 2001, Defendants went to Plaintiff's home at 6:30 p.m. to arrest Plaintiff in connection with an aggravated criminal assault. Def. Facts ¶¶ 6, 8. Plaintiff claims that at the time of his arrest he was "injecting dope in [his] groin area and the hypodermic needle [he] was using broken [sic] leaving 2 ½ centimeters of needle in [him]. While [he] was preparing to go to the hospital [Defendants] knocked on [his] door." Cmplt. at 6; Pl. Ex. 1 ¶¶ 3-4. Plaintiff claims that when Defendants knocked on the door, he told

---

[2]On March 28, 2003, Defendants filed a motion for summary judgment, to which Plaintiff responded on May 6, 2003. Plaintiff attached four affidavits and several medical records to his response. On July 14, 2003, this Court denied Defendants' motion without prejudice because Defendants submitted unsigned and unsworn affidavits, as well as unauthenticated copies of medical and police records, in violation of Federal Rule of Civil Procedure 56 and Local Rules 56.1 and 56.2. Defendants now submit a proper motion for summary judgment, to which Plaintiff has responded. Plaintiff's response, however, contains no affidavits. Therefore, the Court must rely upon the affidavits of record, those submitted with Plaintiff's May 6, 2003 response. Because of this complication, the following citations will be used: Pl. Ex. __ (refers to an exhibit attached to Plaintiff's Response to Defendant's Motion for Summary Judgment dated May 6, 2003); Def. Fact ¶ __ (refers to Defendants Stover and Dougherty's Reply in Further Support of Their 56.1(a)(3) Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment); Def. Ex. __ (refers to an exhibit attached to Defendants Stover and Dougherty's 56.1(a)(3) Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment).

Defendants that he was planning to go to the hospital because of the hypodermic needle embedded in his groin, that he was going through heroin withdrawal, and that he was physically in pain. *Id.*; Pl. Ex. A ¶¶ 13, 18. Defendants deny having knowledge of Plaintiff's conditions, and there is no mention of Plaintiff's complaints in the case supplementary report. Def. Exs. B-D.

Defendants transported Plaintiff to the Area Two police station, interviewed him, and left Plaintiff there while they went to speak to Plaintiff's alleged victim's doctor. Def. Facts ¶ 10. Defendants then returned to the police station and re-interviewed Plaintiff regarding the alleged crime. *Id.* ¶ 12. Plaintiff claims that he made several requests for medical treatment and again told Defendants about his injury and pain. *Id.* ¶ 18; Pl. Ex. A ¶ 18. Additionally, Plaintiff claims that the next day, February 22, 2001, Defendants asked to see Plaintiff's wound, which was "draining a clear substance." *Id.* ¶¶ 18, 20; Pl. Ex. A ¶ 20. Defendants claim that at no point did Plaintiff indicate that he was in physical pain or in need of medical attention and that they never observed any injuries to Plaintiff. *Id.* They also claim that if Plaintiff had indicated that he was in physical pain or needed medical attention, they would have arranged for Plaintiff's transportation to the nearest hospital. *Id.* ¶ 19.

At 9:15 p.m. on February 22, 2001, in the presence of Detective Dougherty and the assistant states attorney, Plaintiff signed a statement, confessing to the crime for which he was arrested, Def. Ex. D, but allegedly did so only because Defendants told him that he would not get medical treatment for his injuries unless he signed the statement, Pl. Ex. 1 ¶¶

4

14, 17. However, the signed confession includes statements by Plaintiff that no threats or promises had been made in exchange for his confession, that he was treated well by the police, that he was given food, coffee, and cigarettes, and that he was not under the influence of drugs or alcohol. Def. Ex. F.

After interrogating and detaining Plaintiff at the police station for approximately thirty hours, Defendants brought Plaintiff to the lockup facility in Area Two at approximately 12:05 a.m. on February 23, 2001. Def. Facts ¶ 21. From that point in time, Defendants did not see Plaintiff again, outside of court proceedings. *Id.* ¶ 22.

At the lockup facility, Plaintiff was processed by Officer Warren Hughes, who conducted a visual check of Plaintiff's physical condition and interviewed him. *Id.* ¶ 23. Officer Hughes claims that he did not see any injuries or physical problems suffered by Plaintiff and did not call to have Plaintiff transported to a hospital. *Id.* ¶¶ 24, 26. Plaintiff claims that he informed Officer Hughes that there was a hypodermic needle embedded in his groin area and that he was going through heroin withdrawal. *Id.* ¶ 24; Pl. Ex. A ¶ 24. Plaintiff spent the night in the lockup. *See* Def. Facts ¶ 24.

During the day of February 23, 2001, Plaintiff was transported to Cermak Health Services of Cook County, the jail's medical facility, in order to undergo a medical screening. *Id.* ¶ 27. The intake officer completed a medical intake record, indicating that Plaintiff's general appearance was good and that his chief complaint was "bad health." Def. Ex. H. On a front-view diagram of the human body, there is a notation that Plaintiff has a scar on his

face. *Id.* There is also a "D" shaped mark encompassing the diagram's abdomen, right hip, and groin areas that may indicate bruising in those general areas, but its true meaning is unclear. *Id.* The accompanying right-side-view diagram has no markings on it. *Id.* Additionally, the intake officer noted that Plaintiff stated that he broke a needle off in his right hip area two months prior. *Id.*; Def. Facts ¶ 28. Plaintiff disputes this statement, claiming that he told the intake officer that the needle broke off two days prior. Def. Facts ¶ 28.

On May 10, 2001, Plaintiff was x-rayed at Cermak Health Services and no foreign bodies were noted in his groin. *Id.* ¶ 33; Def. Ex. I. On June 14, 2001, four months after his arrest, Plaintiff was x-rayed again and a needle was seen embedded in soft tissue projecting over Plaintiff's hip joint. Def. Facts ¶ 34; Def. Ex. J. Medical records dated July 20, 2001, indicate that Plaintiff continued to complain that he broke off a needle in his right groin area five months prior, but the physician was unable to palpate the needle and diagnosed Plaintiff with a needle in his right hip area only. Def. Ex. K. The physician referred Plaintiff to a surgeon for removal of the needle. *Id.* August 7, 2001 medical records indicate that Plaintiff complained of a hypodermic needle broken off in his right groin in February 2001 and that the right groin was tender to palpation. Pl. Ex. I. Medical records from November 27, 2001, and July 11, 2002, indicate that both of Plaintiff's testicles demonstrated a normal sonographic appearance and that blood flow was normal in Plaintiff's right leg. Def. Exs.

M, N. On June 4, 2003, Plaintiff underwent surgery for the extraction of a hypodermic needle from his hip. Pl. Memo. at 18.

Nonetheless, Plaintiff claims that he has suffered nerve damage and pain and numbness in his right leg. Pl. Exs. J, 1 ¶ 14; Pl. Memo. at 18. He alleges constant pain and that he can not sit for a long period of time. Pl. Ex. 2.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment will be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997). A court must take the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1289 (7th Cir. 1997); *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir. 1993). To defeat a motion for summary judgment, the party opposing the motion must present evidence of a triable issue of material fact. *See Vance v. Peters*, 97 F.3d 987, 990 (7th Cir. 1996). A fact is material when it would determine the outcome under the governing law. *Whetstine v. Gate Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party is required to go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Palmer v. Marion County*, 327 F.3d 588, 595 (7th

Cir. 2003); *Bank-Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Proof presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record must be considered. *Degenova v. Sheriff of DuPage County*, No. 97 C 7208, 2001 WL 1345991, at *1 (N.D. Ill. Oct. 31, 2001). However, the court is not required to "scour the record" to find an issue of fact. *Lee v. Brewer*, No. 91 C 7819, 1994 WL 46683, at *1 (N.D. Ill. Feb. 14, 1994). If the non-moving party fails to show that there is a genuine issue for trial, "then the court *must* enter summary judgment against [that party]." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (emphasis in the original).

Therefore, even if made by a *pro se* party, "bald assertions" that are completely unsupported by evidence, are not sufficient to overcome a motion for summary judgment. *Rodriguez v. Mercado*, No. 00 CIV. 8588 JSRFM, 2002 WL 1997885, at *5 (S.D.N.Y. Aug. 28, 2002). Nonetheless, if the claim "turns on which of two conflicting stories best captures what happened," the movant is not entitled to summary judgment. *Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring).

## III. DISCUSSION

Defendants raise two issues. The first is whether they are entitled to summary judgment on the issue of deliberate indifference. The second is whether they are entitled to summary judgment on the issue of qualified immunity. If Defendants are entitled to judgment on either issue, this case will be dismissed.

For the following reasons, this Court finds that Plaintiff has failed to raise genuine issues of material fact regarding the charge of deliberate indifference, and that Defendants are entitled to judgment as a matter of law on that charge. Furthermore, Defendants are protected from trial by the doctrine of qualified immunity. The Court will discuss each issue in turn.

### A. DELIBERATE INDIFFERENCE THROUGH DELAY OF MEDICAL CARE

Plaintiff alleges that Defendants were deliberately indifferent to a serious medical condition from which he suffered at the time of his arrest by depriving him of medical care for an unreasonable amount of time. The Eighth Amendment protects prisoners from deliberate indifference to a serious injury or medical need, which constitutes "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The Due Process Clause of the Fourteenth Amendment extends that right to pretrial detainees because the state may not punish an offense until after it has obtained a formal adjudication of guilt pursuant to the strictures of legal due process. *Palmer v. Marion County,* 327 F.3d 588, 592-93 (7th Cir. 2003). Similarly, a pretrial detainee's claim of deprivation of medical care is governed by the Due Process Clause of the Fourteenth Amendment, and in ruling on the claim, a court applies the standard applicable to the Eighth Amendment protections from deliberate indifference to serious medical needs. *See Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir. 2001).

To prevail on a claim of deliberate indifference, a plaintiff must establish that the defendant displayed deliberate indifference to his serious medical needs. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). Thus, two elements must be satisfied. *Chapman*, 241 F.3d at 845. First, the plaintiff must show that he suffered from "an objectively serious injury or medical need." *Id.* Second, the plaintiff must show that the defendant acted with a "sufficiently culpable state of mind"; that is, the defendant exhibited "deliberate indifference." *Farmer*, 511 U.S. at 834; *Gutierrez*, 111 F.3d at 1369. Additionally, when a plaintiff complains of the delay in receiving medical treatment, rather than the treatment itself, he must also show that the delay caused him to suffer "substantial harm." *Langston v. Peters*, 100 F.3d 1235 (7th Cir. 1996).

For the purposes of this motion only, the Court will assume that Plaintiff can prevail on the first two elements of the deliberate indifference claim. Plaintiff nonetheless can not survive summary judgment because, even if Defendants knew of Plaintiff's serious injury or medical need, Plaintiff can not show that the delay in medical treatment allegedly caused by Defendants caused him the requisite substantial harm needed to prevail.

Regardless of motives, a defendant officer's failure to obtain immediate medical care for a plaintiff constitutes an Eighth Amendment violation only if the delay was "objectively, sufficiently serious" to constitute the "denial of the minimal civilized measures of life's necessities." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). Thus, something more than delay is needed to show deliberate indifference. *Bustamante v. City of Chi. Police*

*Dep't*, No. 89 C 3471, 1993 WL 369325, at *2 (N.D. Ill. Sept. 20, 1993). To succeed, a plaintiff who alleges that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect, that is the substantial harm, caused by delay in medical treatment. *Id.* (citing *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)).

In this case, regardless whether Defendants actually knew of any pain or injury experienced by Plaintiff, Plaintiff can not show that he sustained substantial harm as a result of the delay in medical treatment he alleges was caused by Defendants. Defendants released Plaintiff from their immediate custody in the early morning hours of February 23, 2001, after taking custody of him for approximately thirty hours. From that point on, Defendants had no further contact with Plaintiff. On that date, Plaintiff was examined at Cermak Health Services, and his medical treatment was out of Defendant's control because it was within the control of the jail. The record is clear that there was no harm to Plaintiff from the time of his arrest until he was turned over for medical examination.

Plaintiff, through no fault of Defendants, did not receive an x-ray of his groin until May 10, 2001, at which time the x-ray revealed no foreign bodies in Plaintiff's groin area. In fact, the needle in Plaintiff's hip was not found until June 14, 2001, four months after Defendants released Plaintiff from their custody.

Despite this delay, which again was not caused by Defendants, there is no indication that Plaintiff has suffered any substantial harm. Although Plaintiff claims the delay has caused him to suffer constant pain, nerve damage, pain and numbness in his right leg, and

the inability to sit for a long period of time, he presents no verifying medical evidence to support these claims. Quite to the contrary, Plaintiff's medical records indicate that his testicles appear normal, as does the blood flow in his right leg. The records do not indicate that Plaintiff complained of the symptoms he alleges. Moreover, the only indication in the record verified by medical evidence is that Plaintiff's condition at least stayed the same, if not improved, since Defendants released him from their immediate custody on February 23, 2001.

Simply put, Plaintiff did not suffer any injury because of the delay in treatment. As a result, despite the issue of fact regarding whether Defendants had actual knowledge of the pain he was suffering at the time of his arrest, Plaintiff has failed to survive summary judgment on his claim that Defendants were deliberately indifferent to his serious medical need by depriving him of medical treatment for an unreasonable period of time. Defendants are entitled to judgment as a matter of law.

### B. THE DOCTRINE OF QUALIFIED IMMUNITY

Defendants claim that they are protected by qualified immunity. Qualified or "good faith" immunity is an affirmative defense that "shields the officers from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *Shedd v. Lindsay*, 102 F.3d 282, 287 (7th Cir. 1996) (quoting *Harlow*, 457 U.S. at 818). The doctrine "gives public officials the benefit of the doubt," *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991), and entitles police officers who exercise discretion to an

"accommodation for reasonable error . . . because officials should not err always on the side of caution because they fear being sued," *Hunter v. Bryant*, 502 U.S. 224 (1991). "The entitlement [to a qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Its purpose is to protect all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It protects those officials who act within the "hazy border" between the lawful and the unlawful. *Riccardo v. Rausch*, 359 F.3d 510, 515 (7th Cir. 2004).

Qualified immunity is a legal question properly determined by a court and answered in reference to the particular facts of the case. *Rakovich v. Wade*, 850 F.2d 1180, 1201-02 (7th Cir. 1987) (en banc). When qualified immunity is considered within the context of summary judgment, the usual summary judgment procedure (consider all the undisputed facts in the light most favorable to the non-moving party) should be followed and all of the undisputed evidence in the record should be examined. *Id.* at 1204.

"The inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996). Such an objective analysis, which is less fact bound than a subjective analysis, makes summary judgment a practical and effective means of terminating unnecessary litigation. *Rakovich*, 850 F.2d at 1205.

The Supreme Court articulated the test:

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Harlow*, 457 U.S. at 818-19. A court should ask whether the defendant officer acted reasonably under the settled law, given the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact. *Humphry v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). The Seventh Circuit employs a two-step analysis: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). Under part (1) of this approach, a plaintiff's supported allegations, including intent, are assumed to be true. *Rakovich*, 850 F.2d at 1210. The right under part (2) "should not be defined so intricately that invariably guiding law never can be found." *Id.* at 1211.

"[P]laintiff bears the burden of showing that the officer violated a clearly established constitutional right . . . ." *Clash v. Bearry*, 77 F.3d 1045, 1047 (7th Cir. 1996). " 'Closely analogous cases, those decided before the defendant acted or failed to act, are required to find

that a constitutional right is clearly established.'" *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993) (quoting *Rakovich*, 850 F.2d at 1209). Previous case law, however, need not contain facts that are "materially similar" to the facts contained in the underlying action. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Riccardo*, 359 F.3d at 522 (Williams, J., dissenting). The focus is whether the prior case law would place defendant officers on notice that their conduct is unlawful. *Hope*, 536 U.S. at 739.

Under the circumstances surrounding this case, the inquiries into deliberate indifference and qualified immunity collapse into one because this Court already has determined that Defendants are entitled to summary judgment on Plaintiff's claim of deliberate indifference. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002); *Delgado-Brunet v. Clark*, 93 F.3d 339, 345 (7th Cir. 1996). If there were genuine issues of material fact concerning the elements of deliberate indifference, then Defendants would not be able to avoid trial on qualified immunity grounds. *Walker*, 293 F.3d at 1037 (finding defendant prison doctors were not entitled to qualified immunity on a deliberate indifference claim because there were issues of material fact on the deliberate indifference claim and the general standard of liability under the Eighth Amendment for refusal to treat a serious medical condition was well-established at the time of the events). On the other hand, if the uncontested facts reveal a fatal gap in Plaintiff's case, then Defendants would win on the merits. *Delgado-Brunet*, 93 F.3d at 345 (affirming a district court's determination that a

defendant officer was entitled to summary judgment on grounds of qualified immunity and the lack of any facts tending to show deliberate indifference).

In this case, there is a fatal gap in Plaintiff's case because Plaintiff has not created a genuine issue of material fact supporting his claim that he suffered substantial harm. Defendants, therefore, are entitled to qualified immunity.

## IV. CONCLUSION

**John Doe Staff and Jane Doe Staff are dismissed from this case. Defendants' motion for summary judgment is granted. This case is dismissed with prejudice in its entirety. Any pending motions are denied as moot.**

If Plaintiff wishes to appeal this final judgment, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C); *Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999). If Plaintiff does choose to appeal, he will be liable for the $105 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also accumulate a "strike" for purposes of 28 U.S.C. § 1915(g). Plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious,

or failing to state a claim, he may not file suit in federal court without prepaying the filing fee, unless he is in imminent danger of serious physical injury.

**SO ORDERED THIS 30th DAY OF MARCH, 2004.**

*Morton Denlow*
**MORTON DENLOW**
**United States Magistrate Judge**

Copies mailed to:

| | |
|---|---|
| Cedric Nelson | Liza M. Franklin |
| #2001-0015469 | Assistant Corporation Counsel |
| P.O. Box 089002 | 30 N. LaSalle Street, Ste. 1400 |
| Chicago, Illinois 60608 | Chicago, Illinois 60602 |
| | |
| Pro se Plaintiff | Attorney for Defendants |

# United States District Court
## Northern District of Illinois
### Eastern Division

Cedric M. Nelson      **JUDGMENT IN A CIVIL CASE**

   v.          Case Number: 01 C 8371

Detective D. Stover

- ☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

- ■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that John Doe Staff and Jane Doe Staff are dismissed from this case. Defendants' motion for summary judgment is granted. This case is dismissed with prejudice in it entirety.

Michael W. Dobbins, Clerk of Court

Date: 3/30/2004

Donna Kuempel, Deputy Clerk